**In the Matter of the Application for DISCIPLINE OF Harry N. RAY, an Attorney at Law of the State of Minnesota.**

**No. CX–81–1120.**

Supreme Court of Minnesota.

June 14, 1985.

Michael J. Hoover, Director of LPR, Richard J. Hardens Asst., St. Paul, for appellant.

Jack S. Nordby, Mark W. Peterson, Minneapolis, for respondent.

PER CURIAM.

This attorney disciplinary matter comes to us after a 3-day hearing with the referee's recommendation that respondent be suspended. We conclude a suspension of 3 years should be imposed.

Respondent Harry N. Ray has practiced law since 1953, the last 9 years as a sole practitioner. He now practices out of his home in Bloomington. In 1981, an attorney representing Walter Dale Hall complained about respondent's failure to respond to requests for an accounting of funds that had been entrusted by Hall to the respondent for investment. An investigation followed, resulting in this disciplinary proceeding. The referee's findings may be summarized as follows.

*Benke Trust.* Elmer Benke, respondent's client, died in 1974 and under his will, which respondent had drafted, a trust

was created with respondent as trustee. The sole beneficiary under the trust is the widow, Ruth Benke, now 79. Respondent opened a Benke trust account at a bank in 1976 and sent monthly checks to the widow. Respondent also made the following withdrawals: $5,000 to renovate a house; $3,000 for a loan to Comtrack, a corporation in which respondent had a substantial interest; $500 for a loan to a private individual; $5,000 for a loan to respondent's client, Walter Dale Hall; $15,000 for a loan to Fun Machines, Inc., a corporation wholly owned by respondent; $5,000 as a loan to himself; and another $6,000 as a loan to either himself or Fun Machines. None of these transactions had been disclosed by respondent to the trust beneficiary, Ruth Benke. All of these loans have now been repaid with interest to the Benke trust except the $5,000 Hall loan which remains unpaid. Ruth Benke, the widow, has no complaint about respondent's handling of the trust.

*Hall Trust Account.* In 1973, respondent obtained a personal injury settlement for his client, Walter Dale Hall. Hall entrusted $50,000 of the settlement proceeds to respondent under an oral agreement whereby respondent would invest the money and send Hall monthly checks. From 1973 to 1982, respondent sent Hall monthly payments of $400, although after the first 2 years, respondent stopped sending the client annual accountings. The Hall monies were handled either through respondent's trust account or a separate Walter Hall account. Respondent also invested the funds, primarily in second mortgages, the investments including: $6,000 for a second mortgage on a Harold Avenue property, with respondent named as the mortgagee; $2,500 for a loan to Comtrack, Inc., and $5,000 for a loan to Fun Machines, Inc., both corporations in which respondent had an interest; and $3,273.22 for a loan to a private individual. In addition, between 1974 and 1980, respondent loaned to himself, without any written evidence of indebtedness, a total of $11,300 for his personal use. All these loans have now been repaid, having earned an average of 13%

per annum interest. The referee found that not all the funds had been returned promptly on request, but respondent explains this was because the Harold Avenue mortgage could not be liquidated immediately.

*Klein Trust Account.* In 1978 respondent obtained a personal injury settlement for his client, Vera Klein, who agreed that respondent should hold and invest $45,000 of her recovery on her behalf. For several months in early 1978, there were insufficient funds in the trust account, after allowing for investments, to account for the funds belonging to Klein. Various checks were written on respondent's trust account for material and labor to remodel a fourplex at 719 Hague Avenue, St. Paul, a property in which respondent had an interest, but respondent claimed these payments were an investment made on behalf of Vera Klein. While respondent claimed Klein knew of this transaction, the referee found that she did not. Respondent's records are insufficient to show how much money went into the Hague Avenue property. When Klein requested the balance of the money in June 1978, it was all returned to her promptly. Klein has no complaint about respondent's services.

*Plymouth Baptist Church.* Respondent represented the church in its program to redeem church bonds. A considerable amount of money was involved in this program, but respondent's records are inadequate to identify church funds. At times, funds deposited by or for the church appear to have been disbursed for other purposes, but respondent claims any such disbursements were from his own funds. The church filed no complaint, claimed attorney-client privilege, instructed respondent not to disclose information about its records, and strongly objected to the director's inquiry. The church informed the referee through its counsel that it was more than satisfied with respondent's services. The referee concluded that no violations had been proven by clear and convincing evidence, but expressed concern because the

bookkeeping in the bond redemption program was extremely unclear.

*Ciancanelli Matter.* On July 28, 1980, while representing Kevin Ciancanelli in a pending personal injury suit, respondent advanced $7,000 from his office trust account to Ciancanelli. Respondent claimed the advance was a loan, not intended to cover the cost of litigation and also claimed, although the records are unclear, that the money advanced was his own. The referee found violations of DR 9–102(A) and DR 9–103(A), as well as of DR 5–103(B).

*Mousel Matter.* Respondent commenced a suit against Joseph Mousel while still representing Mousel in another matter, which the referee found to violate DR 5–105(A). Further, when respondent's representation of Mousel ended, he returned the client's papers but required the client to sign a receipt releasing respondent from any liability past, present or future. The referee found that the release was signed "under duress" and was in violation of DR 6–102(A).

*Respondent's Books and Records.* The referee found, and respondent does not dispute, that respondent's books and records of trust account funds were insufficient to identify clients' funds and property during the years 1978 through 1982. During these years, respondent, in paying his annual registration fee, had certified to this court that he had maintained proper books and records as required by DR 9–103. The referee found an "almost total lack of separation of funds * * * between client funds, personal funds, funds of corporations controlled by Respondent, and fees due," and that respondent regularly used the account for his personal and business interests. The trust account was overdrawn by about $3,000 on February 3, 1978, $4,000 on August 3, 1979, and $2,800 on May 5, 1980, and the referee found these overdrafts could not be explained by delays in banking procedures, as respondent claimed.

The question before us is the appropriate discipline to be given. The referee recommends 5 years' suspension, the director urges disbarment, and respondent asks for probation so he may continue to practice "subject to suitable conditions, until his not too distant retirement." We conclude that the referee's recommendation of suspension should be adopted.

Respondent cites several factors which he claims should weigh in favor of a lesser disciplinary measure than suspension. He says he did not "misappropriate" client funds but, to the contrary, invested them for the benefit of his clients. He points out that the clients earned a good return on their investments; that the funds were returned on request; that, except for Walter Dale Hall, no one has complained about his handling of their monies; and that two of the clients, Mrs. Benke and the Plymouth Baptist Church, have expressed confidence in respondent and satisfaction with his services, and, indeed, objected to the director's investigation. Respondent says he made the challenged investments in good faith and charged no fee for his services. He states that he has made restitution (with the exception of the $5,000 loan to Hall which may still be due the Benke trust, but which respondent claims is not owing, notwithstanding the referee's contrary finding), and that he no longer holds client funds and now maintains proper records.

It does not appear that the challenged loans and investments made by respondent were unauthorized in the sense that they were precluded by the trust agreements. The problem is that the transactions were made without the clients' knowledge in ventures in which respondent had a substantial personal interest. This is a clear violation of DR 5–104(A) ("A lawyer shall not enter into a business transaction with a client if they have differing interests therein * * * unless the client has consented after full disclosure."). *See also* DR 5–101(A). The conflict in interest is obvious. *See* DR 5–105. The fact that respondent's clients did not lose their money is a fortuity which does not excuse the disciplinary code violations.

On the other hand, we do not believe the misconduct here warrants disbarment.

The facts are not as egregious as in, say, *In re Quello,* 338 N.W.2d 31 (Minn.1983); *In re Moberly,* 319 N.W.2d 720 (Minn. 1982); and *In re Okerman,* 310 N.W.2d 568 (Minn.1981). The referee noted, as mitigating factors, the limited complaints by clients and the lack of any direct loss to the clients. If respondent put himself in an improper position to benefit himself, he also, it appears, desired to benefit his clients. There is also evidence of respondent's good character and a record of substantial charitable and *pro bono* work. The referee found that respondent is highly regarded by former bar association officers and individuals from the church organization who testified. Respondent has remedied his recordkeeping deficiencies and now does not handle other people's money.

The fact remains, however, that respondent acted seemingly obliviously to his professional responsibilities in handling other people's money. He used money that he was holding for others in his own enterprises. There was extensive commingling of client and personal funds. The recordkeeping was totally inadequate and, if respondent had not been available for the investigation of these matters, it would have been extremely difficult to sort out where matters stood. From 1977 through 1983, respondent had certified in his annual registration statement that his books and records were in compliance with DR 9–103. In 1980, this court, in *In re Shaw,* 298 N.W.2d 133, 135 (Minn.1980), stated that this kind of misconduct "mandates a severe sanction." Unlike *Shaw,* where there was a single incident of temporary misuse of a client's funds, for which we gave probation, here the referee found numerous instances of disciplinary rule violations occurring over a number of years. Clearly, respondent's misconduct warrants more than probation or a short suspension.

Respondent is now 63 years old. The referee recommended a 5-year suspension, observing this is more severe than it would be for a younger person, but then added that if respondent were younger, a longer suspension might have been recommended. Yet, in *In re Daffer,* 344 N.W.2d 382 (Minn. 1984), where a 32-year-old attorney, "[b]linded by greed" and for no reason other than personal gain, engaged in felonious mail fraud, misappropriating over $150,000 accidentally deposited in his investment account, we imposed a suspension of 5 years. In this case, on the other hand, the respondent's misconduct is not as reprehensibly motivated as in *Daffer,* and, as the referee noted, any protracted suspension would, in a practical sense, be tantamount to disbarment. Also, while the referee found over 40 disciplinary code violations, it needs to be remembered that many of these code violations were for the same behavior. Weighing the seriousness of the misconduct against the mitigating factors, we believe that a suspension of 3 years for respondent should be imposed. We conclude, therefore, that:

(1) Respondent is hereby publicly reprimanded;

(2) Respondent is suspended from the practice of law for a period of 3 years; and

(3) Reinstatement at the end of the suspension period is conditioned on proof that all clients have received all funds due them from respondent.

It is so ordered.