**In the Matter of the Application for the DISCIPLINE OF George C. GUBBINS, Jr., an Attorney at Law of the State of Minnesota.**

No. C3–85–61.

Supreme Court of Minnesota.

Feb. 7, 1986.

William J. Wernz, Director, Lawyers Professional Responsibility Bd., St. Paul, for appellant.

George C. Gubbins, Hamel, pro se.

PER CURIAM.

This case comes to us for the imposition of discipline based on a referee's findings of misappropriation, trust account and office account improprieties, and false certifications to this court. We adopt, essentially, the referee's recommendation for discipline.

Respondent George C. Gubbins, Jr., was admitted to practice in this state in 1955. Since 1960 he has been a sole practitioner, and since 1980 has practiced law in Medina, Minnesota, in Wright County. In the spring of 1984, the Lawyers Board of Professional Responsibility received a complaint that a party who had painted respondent's house was having trouble collecting his bill. Respondent had paid $500 on the bill with a check from his lawyers trust account, and two other checks, one of which was also drawn on the trust account, had been returned for insufficient funds in the accounts. There was a board investigation, followed by a hearing before a referee, retired District Judge Bruce C. Stone. The referee's findings are summarized as follows:

1. On December 8, 1981, respondent received a $15,000 personal injury settlement check on behalf of a client and deposited the check in his business account, which had a negative balance of $1,336.78, leaving a positive balance of $13,663.22. During the next few days, respondent wrote checks on this account for his own benefit totalling nearly $14,000. On May 3, 1982, some 5 months later, the client was paid her net recovery of $7,727.96 from respondent's trust account. The delay in disbursement to the client was occasioned largely by respondent's negotiations with the welfare board to reduce its subrogation claim from $8,000 to $662.70. Payment of the $662.70 owed the welfare board was overlooked, but was paid when discovered at the time of the disciplinary hearing.

During this 5-month period when at least two-thirds of the $15,000 should have been in the trust account, there were only 4 days when the trust account had more than a $6,000 balance, and during the same period respondent's business account had frequent significant negative balances. The referee found that the client's settlement funds had been misappropriated by respondent during the 5-month period "but without any intent to cheat or defraud his client K.S."

2. The referee also found deficiencies and improprieties in respondent's keeping of accounts and records. Respondent commingled personal and client funds in both his personal and trust accounts. Checks for personal matters were written on the trust account and funds that should have gone in the trust account were put in the business account. Respondent issued 125 NSF checks on his office account in 1983, 20 NSF checks on his trust account from January through April 1984, 5 NSF checks on his Bank of Maple Plain office account during 1984,[1] and 20 NSF checks on his Norwest Bank office account during the period from November 1984 to March 1985. Included among the payees were clerks of court, court reporters, other attorneys, the Internal Revenue Service, and this court. Respondent explained that he thought there were sufficient funds in the accounts when he wrote the checks, or that, in some cases, he understood the bank would honor the checks as overdrafts. Respondent's books contained cash receipts, cash disbursements, fees, and ledger entries, but respondent failed to maintain periodic bank balance reconciliations as required by the rules. The referee found that respondent's books and records, "although haphazard in appearance in some instances, meet minimal requirements of Opinion 9 of the Board of Professional Responsibility."

3. In 1982 and 1983 respondent certified to the clerk of the supreme court that he maintained required law office and trust account books and records. The referee found this certification was "erroneous" and that respondent was not familiar with Opinion 9 and was unaware his records were inadequate. On March 15, 1984, respondent also certified, "I do not handle client funds," but, in fact, on that very day he had made a client deposit of $9,000 in his trust account, although immediately disbursing the funds. Because of this certification, respondent did not maintain an interest bearing trust account as required by the IOLTA program. The referee found that this certification was not "a knowingly false certification."

4. Twice before, on January 21, 1980, and again on June 16, 1982, respondent had stipulated and accepted a warning from the board's director for delay in payment of personal and business bills.

Based on the foregoing findings, the referee recommended that respondent be publicly reprimanded, suspended from the practice of law for 4 months, and placed on 2 years' probation after reinstatement. The director, on the other hand, urges a 3-year suspension, contending that the misappropriation was deliberate, that the commingling was chronic, that the books and records were not even minimally adequate, and that respondent fails to recognize the seriousness of his misconduct. The referee conceded that the respondent's conduct would appear to warrant a long-term suspension, "[b]ut in the context of the Respondent's restitution, lack of bookkeeping aptitude, and apparent sincerity, a shorter suspension would appear to serve the ends of justice."

The record reveals a lawyer in his late fifties, a busy sole practitioner who is hardworking and devoted to his clients. He lacks, however, both an interest in and aptitude for bookkeeping and appears to rationalize his lack of concern for the adequacy of his records and accounts by focusing instead on how conscientiously and effectively he works for his clients. His

---

**1.** This finding of 5 NSF checks on the Bank of Maple Plain may be a clerical error. It appears that the correct number is 52, as the director claims, and the referee, by finding a grand total of 217 NSF checks, implicitly agrees.

problems in the office during the times here involved were exacerbated by inexperienced clerical help, serious illnesses of his wife and elderly father, and an unusually heavy caseload which monopolized his attention and resulted in extended absences from his office. Also, a real estate investment had created personal financial problems which are now apparently under control. No client has lost money, and there is no suggestion defendant had any intent to defraud any client. Respondent expresses contrition and claims he now has his books and records in compliance with the rules. He complied promptly and completely with the director's investigation. Respondent needs to appreciate, however, that "borrowing" from client funds, no matter how temporary or no matter how seemingly "safe," is misappropriation and is not to be countenanced. Neither can preoccupation with trying cases be deemed justification for neglect of proper office management practices.

While we alone are responsible for determining appropriate discipline, we place "great weight" on the referee's recommendations, *In re Pearson*, 352 N.W.2d 415, 419 (Minn.1984), and while we should strive for consistency in disciplinary cases, each case presents its own unique set of violations and mitigating circumstances, and prior cases are helpful only by analogy. *In re Serstock*, 316 N.W.2d 559, 561 (Minn.1982). This case, it seems to us, as it did to the referee, is not unlike *In re Heffernan*, 351 N.W.2d 13 (Minn.1984).

Accordingly, we impose the following sanctions:

1. Respondent George C. Gubbins, Jr., is publicly reprimanded.
2. Respondent is suspended from the practice of law for 4 months, commencing 1 week from the date of this decision.
3. The requirements of Rule 18(e) on Lawyers Professional Responsibility for reinstatement following suspension are waived, except reinstatement shall be conditioned on respondent's successfully passing the multistate examina-

tion on professional responsibility and being current in his Continuing Legal Education requirements.
4. Reinstatement is further conditioned on respondent's engaging a certified public accountant to audit the financial affairs of his practice and to assist in the installation of a system of books and accounts that fully meets the bookkeeping requirements of this court and the board; prior to reinstatement, respondent shall furnish written proof, including the accountant's report, satisfactory to the Director of the Board of Professional Responsibility that this condition has been met.
5. Upon reinstatement, respondent shall be placed on supervised probation for 2 years for the purpose of monitoring his compliance with the requirement for keeping proper books, records, and accounts.

It is so ordered.

KELLEY, J., dissents.

KELLEY, Justice (dissenting).

Because I'm convinced the continual conduct of respondent in the mishandling of his law office financial affairs merits a long period of suspension, if, indeed, not an out and out disbarment, I dissent.

While it is true that none of respondent's clients sustained any financial losses as the result of his cavalier handling of their funds, the fact undisputedly remains that those funds were at risk for long periods of time. This court has not hesitated to indefinitely suspend nor to disbar merely because clients have not sustained financial loss from improper mishandling of their funds. *See, e.g., In re Ray*, 368 N.W.2d 924, 926 (Minn.1985); *In re Quello*, 338 N.W.2d 31, 33 (Minn.1983); *In re Austin*, 333 N.W.2d 633, 634–35 (Minn.1983); *In re Serstock*, 316 N.W.2d 559, 561 (Minn.1982). As the majority demonstrates, in the matter of K.S., for a period of five months there were only four days where more than a $6,000 balance was in the account when it should have shown, at a minimum, a bal-

ance of at least $10,000, and during that period respondent's business account had frequent and significant negative balances. Had respondent died or become disabled during that period, there were insufficient funds in this trust account to remit to clients, because of the respondent's "borrowing" from the accounts for his own personal uses.

Not only was that the case, but respondent continually commingled personal and client funds in both his personal and trust accounts. During 1983 and 1984, respondent issued almost 200 insufficient fund checks. Among the payees on those checks were clerks of courts, court reporters for services rendered, other attorneys, the Internal Revenue Service, and even this court. Not only were his books kept "haphazardly," but in 1982 and 1983 he falsely certified to this court that he maintained required law office trust account books and records. His lame excuse for doing so was that he, a lawyer, was not aware that his records were inadequate to meet legal requirements—a claim that to me is unbelievable! As further demonstration of his disdainful disregard of his professional responsibilities, on March 15, 1984, respondent certified that he did not handle client funds, even though on that very day he had made a client deposit of $9,000 in his trust account. I fail to comprehend how anyone could conclude that this was not "a knowingly false certification."

I would conclude that misappropriation and use of client funds was deliberate, that the illegal commingling of funds was chronic and continuing, that the books and records were not even normally adequate to meet legal professional requirements.

In addition, I'm strongly compelled to the conclusion respondent ignores, minimizes, or intentionally fails to recognize the seriousness of his continued misconduct. Outside his own self-serving statements before this court at the disciplinary hearing, respondent has offered no proof that he has taken steps to bring his books and records in compliance with legal accounting requirements governing Minnesota lawyers.

When respondent appeared before this court, the Director was recommending a long term of suspension or disbarment. I would think that this proceeding might be a matter of some importance to the respondent to the extent that he would present evidence to this court of change of handling of his financial matters. He did not do so. Instead, he minimized his fiscal oversights by contending he was so busy representing clients and advancing their interest and rights, that he thought maintenance of proper books and records, "borrowing" of client funds, and wrongful and illegal certification to this court were relatively unimportant.

There are hundreds, if not thousands of Minnesota lawyers, who are as busy, as hardworking, and who are just as devoted to their clients' interest as respondent claims to be. Yet, presumably, they recognize that legal professional obligations place the onus on each of them to keep adequate records, to make honest certifications to the court of compliance with professional rules, and to not commingle client and personal funds.

I would suspend respondent from the practice of law indefinitely with no right to apply for reinstatement sooner than three years, and then only if respondent has successfully passed the multistate bar examination on professional responsibility as well as being current in his Continuing Legal Education requirements.