**In re Petition for DISCIPLINARY ACTION AGAINST Joel A. MONTPETIT, an Attorney at Law of the State of Minnesota.**

**No. CX–94–260.**

Supreme Court of Minnesota.

March 24, 1995.

Marcia A. Johnson, Director Lawyers Professional Responsibility Bd., Kenneth L. Jorgensen, First Asst. Director, Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Meshbesher, Singer & Spence, Minneapolis, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility brought a petition for disciplinary action against Joel A. Montpetit ("respondent") alleging he engaged in serious trust account violations between January 1989 and April 1992. The allegations arose out of the Director's investigation into a trust account overdraft notice received from Norwest Bank in March 1992.

Respondent was admitted to practice law in Minnesota on October 17, 1969, and currently practices law in a partnership with two other attorneys with offices in South St. Paul, Minnesota. In March 1992, the Director's office received an overdraft notice from Norwest Bank on a trust account that respondent had maintained since 1983. After review of respondent's books and records, the Director's office determined that between January 1989 and April 1992, a total of 76 trust account overdrafts had occurred.

There were 14 overdrafts in 1989, 22 in 1990, 23 in 1991, and 17 in 1992. The amounts of the overdrafts ranged from $10.94 to $31,-864.10. The March 1992 trust account overdraft was the first one reported to the Director by Norwest. It was determined that from 1983 until April 1992, respondent delegated responsibility for maintaining his trust account to his secretary, who had no special skill or training in maintaining a trust account.

After the Director was notified of the trust account overdraft, but before the Director commenced these disciplinary proceedings, respondent hired an accountant to establish and implement proper law office bookkeeping systems and trust account procedures. An audit of the trust account books and records conducted by the accountants revealed that in 28 of the 40 months audited, there were shortages in the trust account ranging from $2,620 to $71,718.59.

On May 18 and 19, 1994, a hearing on the Director's petition was held before Referee Arthur J. Boylan. The referee concluded that respondent: (1) permitted trust account shortages in violation of Minn.R.Prof.Conduct 1.15(a) and (b), and that the shortages stemmed from respondent's use of trust account funds to cover personal transactions on behalf of himself, his family, and his friends; (2) commingled funds in violation of Minn.R.Prof.Conduct 1.15(a) and 1.15(b)(4), by depositing personal funds into the trust account and by failing to promptly withdraw earned attorney fees from the trust account; and (3) falsely certified that his trust account books and records were properly maintained in violation of Minn.R.Prof.Conduct 1.15(b), (d), (g), and (h). In addition, the referee concluded that respondent did not have actual knowledge that his trust account records were improperly maintained, did not have actual intent to submit the false certifications, and his conduct was not intentional, but negligent. Finally, the referee found that throughout the period the violations

were occurring, no client complained about the trust account shortages and no client suffered a financial loss. The referee recommended [1] that respondent receive a stayed 6–month suspension conditioned on his satisfactory completion of a 48–month probationary period during which he would not be involved in trust account management, his payment of the reasonable costs of the disciplinary proceeding, and his taking and passing the professional responsibility portion of the bar examination.

The Director filed a certificate as to transcript, pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), making the referee's findings and conclusions not conclusive. The Director contends the referee's finding that respondent's violations were negligent was clearly erroneous and argues the referee's recommendation of a 6–month stayed suspension constitutes insufficient discipline for respondent's rule violations. The Director recommends a minimum 6–month suspension with no stay. For his part, respondent admits the misconduct and asserts that because the misconduct was not born of evil intent or malevolence, the referee's recommendation as to discipline should be followed.

A referee's factual findings in attorney disciplinary matters will not be set aside unless clearly erroneous. *In re Larsen*, 459 N.W.2d 115, 116 (Minn.1990). Furthermore, we defer to the referee's findings when they rest on demeanor, credibility, or sincerity. *Id.* Here the referee's factual findings are supported by the evidence produced at the hearing. The referee's conclusion, however, that respondent's conduct was merely negligent because respondent did not have actual knowledge that his trust account books and records were improperly maintained is clearly erroneous. While respondent may not have acted out of evil intent or malevolence, he knew or should have known, based on the

---

1. The referee's recommendation for discipline was in part based on his factual findings that respondent cooperated fully in the disciplinary investigation, has no history of prior discipline, accepted responsibility for the violations, has taken extensive measures toward implementing proper trust account procedures, has a reputation in the legal community for integrity and hard work, and that the trust account violations were not the result of deliberation or intent to misappropriate funds.

information available to him,[2] the trust account was being mishandled. *In re Porter,* 449 N.W.2d 713, 718 (Minn.1990). Further, attorneys in this state are charged with knowledge of the requirements for handling client funds. *In re Kinnunen,* 502 N.W.2d 773, 775 (Minn.1993).

Attorney discipline proceedings are designed to protect the public from attorneys who are unable to properly discharge their duties. Standards for Imposing Lawyer Sanctions Standard 1.1 (ABA 1991). The rationale behind discipline is not to punish the lawyer, but to deter misconduct by members of the bar. *In re Boyd,* 430 N.W.2d 663, 667 (Minn.1988); *see also In re Stroble,* 487 N.W.2d 869, 870 (Minn.1992). The final responsibility for determining the appropriate discipline rests with this court. *In re Pyles,* 421 N.W.2d 321, 325 (Minn.1988). Inquiry into the appropriate measure of discipline is subjective, and while consistency is a goal of this court, the court recognizes that each case involves different facts, violations, and different mitigating and aggravating circumstances. *Boyd,* 430 N.W.2d at 664–65.

In a case factually similar to the one at hand, this court determined that violations, including misappropriation, trust account violations, office account improprieties, and false certification to the court, warranted suspension for a period of 4 months. *In re Gubbins,* 380 N.W.2d 810, 812 (Minn.1986). In determining a 4–month suspension was warranted, we noted that no client had lost money, that there was no suggestion of any intent to defraud clients, and that Gubbins had since organized his books and records, expressed contrition, and promptly and completely cooperated with the Director's investigation. *Id.*

In another similar case, an attorney with no prior disciplinary record falsely certified on his 1990, 1991, and 1992 attorney registration statements that he maintained the requisite trust account books and records, commingled client and personal funds in his trust account, otherwise mishandled his trust account, and misappropriated earnest money held in connection with three separate real estate transactions. *In re Field,* 506 N.W.2d 631 (Minn.1993). We ordered the attorney suspended for 1 year. *Id.* In *Field,* substantial restitution had been made and the attorney had been candid and cooperative in the Director's investigation. *Id.*

Other cases involving conduct similar to respondent's have yielded varying sanctions. *See In re Brudvig,* 503 N.W.2d 102 (Minn. 1993) (unintentional misappropriation of client funds from pooled trust account, failure to maintain proper books, false certification for 4 years, failure to put contingent fee in writing, and neglect of client matters resulted in public reprimand and 2 years' supervised probation); *In re Anderson,* 491 N.W.2d 656 (Minn.1992) (failure to maintain required trust account books and records and false certification resulted in supervised probation for 2 years); *In re Rudeen,* 463 N.W.2d 719 (Minn.1990) (commingling of personal and trust account funds, use of trust account as a personal checking account, failure to maintain adequate trust account records, false certification as to the maintenance of the records, failure to timely file state income tax returns for 6 years, and failure to timely file federal income tax returns for 8 years resulted in 6 months' suspension).

Respondent argues that unusual circumstances and mitigating factors require that the discipline recommended by the referee be upheld. The unusual circumstances he urges us to consider are the fact that his trust account problems stemmed from a lack of organization and calculation, and that his bankers "lulled" him into "underestimating the problem" by their tolerance "in paying the many overdrafts, and in *not* reporting them as they were required to do." Mitigating factors respondent presents include his acknowledgment that his books were in disarray and his accounts were often over-

---

**2.** Respondent admitted that as early as 1989 he was aware that his trust account was overdrawn on occasion. In addition, respondent concedes that in 1990, 1991, and 1992 his secretary requested that he make substantial money deposits from his business account into his trust account which went to correct overdrafts. Respondent also received numerous notices from Norwest Bank urging him to bring his overdraft problems under control and met with his banker to discuss his overdraft problems.

drawn, and that he has accepted full responsibility for his actions and has taken measures to ensure that both his business and personal accounts, as well as his trust account, are in order so as to avoid any future problems. In addition, respondent argues that he is a good, hardworking, and honest attorney, as evidenced by affidavits of character provided by two district court judges and the former speaker of the Minnesota House of Representatives.[3] Respondent also notes that no client lost money, there was no scheme to defraud his clients, and there was never any real risk to his clients because of his substantial net worth.

We find respondent's arguments with respect to the unusual circumstances and mitigating factors unpersuasive. The facts that respondent is disorganized and that the bank failed to report his overdrafts sooner do not amount to unique circumstances which excuse his failure to comply with our professional conduct rules. Further, we do not consider respondent's purported mitigating factors to be such.

The appropriate sanction for respondent's conduct is a 4–month suspension. Before he may be readmitted to the practice of law, respondent shall take and successfully pass the professional responsibility portion of the Minnesota Bar Examination, and, upon readmission, respondent shall be subject to a supervised period of probation of 4 years. Respondent shall comply in all respects with Rules 24 and 26, RLPR. The terms of respondent's probation are as follows:

(1) During the period of probation respondent shall not be active in trust account management;

(2) All books and records concerning law office income and expenses and funds held on behalf of clients shall be maintained in compliance with Minn.R.Prof.Conduct 1.15;

(3) He shall employ a public accountant to maintain separate business and client trust accounts;

(4) All client trust accounts shall be supervised by a licensed attorney;

(5) He shall fully comply with the supervisor's efforts to monitor compliance;

(6) He shall fully cooperate with efforts by the Director's office to monitor compliance; and

(7) He shall pay to the director the sum of $750 for costs and disbursements.

---

**3.** Affidavits of character were provided by the Honorable Thomas Murphy and the Honorable M. Eugene Atkins, district court judges, and Harry A. Sieben, Attorney at Law.