ANDERSON, Justice
(dissenting).
Although I agree with the majority’s conclusion that Severson violated Rules 1.7,1.8, 8.1, and 8.4 of the Minnesota Rules of Professional Conduct, I respectfully dissent from the discipline imposed by the majority.
I begin with the observation that determining the appropriate discipline here is not free from doubt and reaching the appropriate result is more challenging than in some of our other cases. While we are the final arbiter of discipline, there is no doubt that our conclusions are informed by the recommendations of the referee. Here the referee recommended a 3-month suspension, concluding that protection of the public did not require a longer suspension. The majority effectively decides that not all of the referee’s findings of -wrongful conduct can be affirmed, but decides nonetheless that a longer suspension is required. I conclude that the referee has the better of the argument here.
“[T]he purpose of [attorney] discipline is not primarily punitive but ‘to guard the administration of justice and to protect the courts, the legal profession and the public.’ ” In re Serstock, 316 N.W.2d 559, 561 (Minn.1982) (quoting In re Hanson, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960)). Disciplinary sanctions not only protect the public from future unethical behavior, but also “deter future misconduct by the disciplined attorney as well as by other attorneys.” In re Albrecht, 779 N.W.2d 530, 540 (Minn.2010) (internal quotation marks omitted) (quoting In re Vaught, 693 N.W.2d 886, 890 (Minn.2005)).
Some measure of discipline is warranted here. Severson conceded an attorney-client relationship with D.S. from 2004-2009, and therefore he violated Rules 1.7 and 1.8 during that period, although the referee found that D.S. suffered no losses as a result of those violations. Severson also concedes that the false invoices had a “misleading effect,” although he contends *676 that the referee’s findings do not prove that anyone was actually misled.
The majority concludes that Severson and D.S. had an attorney-client relationship when they entered into the investment agreement, based on the referee’s finding that Severson drafted an investment agreement and a power of attorney. Although these findings and conclusions by the referee are not clearly erroneous, the existence of an attorney-client relationship in 1996 is tenuous at best. To his credit, the referee agreed, stating that “a reasonable counter-argument could be made under the facts and especially under the law.” The referee therefore recommended a 3-month suspension, or a public reprimand if we concluded that no attorney-client relationship existed in 1996. By contrast, in the conflict-of-interest cases cited by the majority, the attorney clearly represented the client before the inappropriate business relationship commenced. See In re Dillon, 371 N.W.2d 548, 550 (Minn.1985); In re Ray, 368 N.W.2d 924, 924-26 (Minn.1985). The results here show the dangers of engaging in business relationships with those who are arguably clients of the lawyer. That said, because of the unusual relationship of the parties and the facts underlying and surrounding the execution of the power of attorney,[1] it is my conclusion that the imposition of discipline is more appropriately focused on serious, and largely undisputed, violations: the misrepresentations made to D.S., the Director, and others.
I therefore conclude, based on the record before us, that the referee’s recommendation of a 3-month suspension is appropriate here, even though there remain substantial questions about investment decisions made by Severson while handling funds belonging to D.S. Although the referee’s findings and conclusions are not binding on us, the referee is in the best position to assess the credibility of witnesses. In this case, the referee, after hearing the testimony of all of the relevant parties, noted that Severson’s actions were not “underhanded, malicious, or predatory,” and that he acted in order to benefit a young woman who was like a daughter to him.[2] The referee made no findings that the unusual facts here constitute a risk to the public requiring more severe discipline of Severson.
We have imposed the same or lesser penalties on attorneys who committed more serious acts of dishonesty. See, e.g., In re Czarnik, 759 N.W.2d 217, 224 (Minn.2009) (imposing a 3-month suspension on an attorney who lied under oath); In re *677 Jain, 587 N.W.2d 291, 291-92 (Minn.1999) (order) (imposing a public reprimand and 2 years supervised probation on an attorney who misrepresented the status of a case to her client for 9 months); In re Iliff, 487 N.W.2d 234, 235-36 (Minn.1992) (imposing a 3-month suspension on an attorney who intentionally misled the Director regarding a fabricated settlement); In re Ruffenach, 486 N.W.2d 387, 389-91 (Minn.1992) (imposing a 3-month minimum suspension on an attorney who falsified two court-ordered financial disclosure forms and had been disciplined four times in the past). Greater discipline has usually been reserved for cases in which the attorney intentionally defrauds clients or other parties. See, e.g., In re Jagiela, 517 N.W.2d 333, 334 (Minn.1994) (imposing a 6-month suspension on an attorney who backdated an agreement, submitted the agreement to the court and opposing counsel, and failed to correct false statements related to the agreement); In re Boyd, 430 N.W.2d 663, 663-64, 666-67 (Minn.1988) (imposing a 6-month suspension on an attorney who forged, backdated, notarized, and filed a warranty deed and had previously been reprimanded three times). Although Sev-erson made potentially misleading statements, the record contains no evidence that any party was actually misled, let alone misled to their detriment.[3]
A lawyer’s first responsibility is to represent his client’s interests. There is great peril for both lawyer and client when, as here, the client’s interests and the lawyer’s interests are intertwined. Severson’s failure to make his client’s interests the paramount concern necessitates discipline. Given the unique facts in this record, however, I would suspend Sev-erson from the practice of law for 3 months as recommended by the referee.

. The majority relies on the drafting of both the investment agreement and the power of attorney in concluding that an attorney-client relationship existed. The power of attorney is clearly a legal document that may be, and often is, drafted by an attorney, and that is sufficient evidence of an attorney-client relationship. I see no reason to reach the question of whether the drafting of the investment agreement also implicates the attorney-client relationship.

. I disagree with the majority’s conclusion that Severson's lack of remorse is an aggravating factor. The referee, who was in the best position to determine Severson’s credibility and demeanor, concluded that remorse was neither an aggravating nor mitigating factor. See In re Moulton, 721 N.W.2d 900, 905 (Minn.2006) ("Deference to the referee is particularly appropriate when the findings are based on a respondent’s demeanor, credibility, or sincerity.” (citing In re Pinotti, 585 N.W.2d 55, 62 (Minn.1998))). This conclusion is supported by the record because Sev-erson was remorseful about losing his relationship with D.S. and his inability to repay her in full, but Severson’s showing of remorse was limited by his decision to deny allegations of misconduct. I would therefore find that the referee did not clearly err by declining to consider lack of remorse as an aggravating factor.

. The majority concludes "the referee’s finding that Severson made intentional misrepresentations in letters to the Director about when D.S.’s money was invested in FSSCF was not clearly erroneous.” This statement is accurate as far as it goes, and I would not disagree with the court’s conclusion. There are additional facts here, however, that suggest the materiality of these misrepresentations may be doubtful. It is undisputed that these communications occurred between Sev-erson’s lawyer during the disciplinary proceedings and the Director, and the initial letter from the lawyer correctly reported that this transaction occurred in 2002. Later communications from the lawyer stated this transaction occurred in 1996 before it was finally reported that the 2002 date initially disclosed was, in fact, the correct date. The significance of these discrepancies is not clear. I am more troubled by Severson's assertion that he does not remember where the $500,000 entrusted to him by D.S. was invested between 1996 and 2002. The referee made no findings on the credibility of Sever-son’s assertion that he does not remember where this substantial sum of money was invested during that 6-year time period. But we impose discipline based on facts found and conclusions reached, not speculation.