**In re Petition for Disciplinary Action against James J. BOYD, an Attorney at Law of the State of Minnesota.**

No. C3–87–1439.

Supreme Court of Minnesota.

Oct. 28, 1988.

William J. Wernz, Kenneth L. Jorgensen, St. Paul, for appellant.

Michael J. Hoover, Minneapolis, for respondent.

PER CURIAM.

The Office of Lawyers Professional Responsibility filed a petition for discipline against respondent, James J. Boyd, on July 27, 1988. The parties agreed to dispense with formal panel proceedings pursuant to R.Law.Prof.Resp. 10(a), and the matter was subsequently heard by a court-appointed referee. Following the hearing, the referee issued findings of fact and conclusions of law and recommended a 4–month suspension. The director's office and respondent then entered into a stipulation for discipline incorporating the referee's recommendations. After consideration, this court rejected the stipulation and ordered both parties to submit briefs.

Neither the director nor the respondent ordered a transcript of the referee hearing so the referee's findings of facts and conclusions of law are, therefore, conclusive in accordance with R.Law.Prof.Resp. 14(e). We adopt the findings and recommendations of the referee with the exception of the penalty.

Since being admitted to the practice of law in Minnesota on October 20, 1967, Mr. Boyd has been associated with four different law firms, worked as a sales representative for West Publishing, assisted in the writing of two legal books and taught courses at Hamline University and William Mitchell College of Law. Since February 1987, he has been a sole practitioner in St. Paul.

The matter which has resulted in the current disciplinary action against respondent began with his preparation of a false warranty deed in December 1984 or January 1985. At that time, Judith Lefto and Donald Welligrant, Jr., came to Attorney Boyd's office to discuss the estate of their father, Donald Welligrant, Sr., who had died intestate on August 24, 1984. Respondent presented to Judith Lefto an unsigned warranty deed purporting to convey the estate's homestead to the two children prior to Donald Welligrant, Sr.'s death. After practicing her father's signature, Judith Lefto signed his name to the deed at the direction of the respondent. The forged

deed was dated June 28, 1984, almost 2 months before Welligrant's death, and was designed to avoid probate proceedings.

Respondent then subjected himself to further discipline by directing a notary public at his office to certify the false signature. On February 26, 1985, the forged deed was recorded at the Ramsey County Recorder's Office.

On February 28, 1985, respondent provided a title opinion regarding the Welligrant property to the First State Bank of White Bear Lake. In that opinion, he affirmed the false transfer of the property by the back-dated warranty deed. The bank relied on the false title opinion in approving a mortgage application for Judith Lefto and Donald Welligrant, Jr.

Respondent alleged in his answer to the petition for disciplinary action that his conduct was due to "substantial personal mitigating circumstances including alcoholism." Despite a recognition of respondent's alcohol problem, the referee concluded that alcoholism was not a mitigating factor to consider in deciding the appropriate disciplinary sanction. The referee's final conclusion of law reads: "Respondent failed to establish by clear and convincing evidence that his alcoholism was a direct and contributing cause toward his misconduct and that he is recovering from his alcoholism. Respondent's alcoholism does not constitute a mitigating factor in determining the appropriate disciplinary sanction."

Other mitigating factors were also considered, and rejected, by the referee. Respondent's conduct was attributed not to his alcoholism or other work or family stresses, but to his lack of "being motivated and influenced by the importance of fully abiding by our system of justice." The referee did note, however, that respondent has cooperated in the disciplinary process and had made sincere and convincing expressions of remorse.

After citing numerous Minnesota Code of Professional Responsibility violations, the referee recommended that Boyd be suspended from the practice of law for 4 months. The director's proposed recommendation had been a 1-year suspension. The director, however, now concurs with the referee's recommendation.

The referee also recommended 2 years' probation after respondent's suspension. Additionally, reinstatement was to be conditional on respondent following through on the recommendations of a chemical dependency evaluation and passing the multistate professional responsibility exam. The respondent underwent a chemical dependency evaluation on December 9, 1987, and, in the stipulation for discipline, agrees to abide by the recommendations of the evaluator (participation in an out-patient treatment program, abstinence, attendance at regular AA and Lawyers Concerned for Lawyers meetings).

Neither the referee's recommendation nor the stipulation agreed to by the parties necessarily controls the outcome of this disciplinary action. The court places great weight on recommendations made by a referee; nevertheless, it alone has the final responsibility to determine the appropriate discipline. *In re Franke,* 345 N.W.2d 224, 228 (Minn.1984); *In re Fling,* 316 N.W.2d 556, 559 (Minn.1982). It is not unusual for this court to substitute its judgment for referees' recommendations. The actual discipline may be less than the referee's recommendation as in *In re Getty,* 401 N.W.2d 668 (Minn.1987) (the court issued a strong reprimand instead of following the referee's recommended 60-day suspension), or more severe. *See, e.g., In re Franke* 345 N.W.2d 224 (Minn.1984). Similarly, the court is free to reject the stipulation of the parties as it alone is responsible for determining the appropriate discipline. *In re Pearson,* 352 N.W.2d 415, 419 (Minn.1984).

The court's rejection of the parties' stipulation presents the following issue: What is the appropriate discipline for an attorney who prepares a false deed, causes it to be forged, falsely notarized and filed and later issues a title opinion based on the fraudulent deed?

The inquiry into the appropriate measure of discipline for an attorney is necessarily subjective. Consistency is certainly a goal, but each case involves a different factual

setting, different violations and different mitigating or aggravating circumstances. *In re Gubbins,* 380 N.W.2d 810, 812 (Minn. 1986). To this extent, prior disciplinary case law is helpful only through analogy, *In re Serstock,* 316 N.W.2d 559, 561 (Minn. 1982), and the facts of each individual case must be carefully examined.

Respondent's conduct in preparing the false deed and directing Judith Lefto to forge her father's signature was criminal in nature. In addition to numerous ethical violations cited by the referee, respondent exposed himself, as well as his client and the notary in his office, to criminal liability. The fraudulent conduct here was more than a mistake in judgment. The forged deed was deliberately designed to avoid probate proceedings.

Despite the fact that neither Judith Lefto nor the bank suffered a direct economic harm, respondent's conduct shows a grave lack of respect for the law. Mr. Boyd arguably could have faced criminal charges of forgery, aggravated forgery, or liability for recording or filing a forged document. (*See* Minn.Stat. § 609.625–65 (1986).) His misconduct was not only untruthful and in poor judgment, it was patently illegal. This court has strongly condemned untruthfulness and a lack of due respect for the law: "When * * * a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers to the end that the system of justice will not be undermined, courts do not hesitate to impose severe discipline." *In re Schmidt,* 402 N.W.2d 544, 548 (Minn. 1987).

The director's and respondent's briefs to this court discuss previous disciplinary cases in Minnesota involving forgeries or false sworn statements. Both parties concluded from these cases that a 4–month suspension was appropriate for Mr. Boyd's misconduct. Three of the cases discussed by the parties resulted in public reprimands. *In re Cohen,* 354 N.W.2d 429 (Minn.1984); *In re Dowdal,* 284 N.W.2d 394 (Minn.1979); *In re Finley,* 261 N.W.2d 841 (Minn.1978). The court's leniency in these cases, however, is not due to its acquiescence in this type of misconduct, but, rather, is the result of the unique facts of each case.

In *Finley,* the reprimanded attorney notarized documents that were not signed in his presence. 261 N.W.2d at 845. He believed that the signatures he notarized were genuine and the court found that he, unlike Attorney Boyd, had no intent to defraud. *Id.* at 846. Noting that a public censure would suffice in *Finley* due to the above mitigating factors, and the fact that respondent had an otherwise unblemished record and had cooperated in the proceedings, the court warned: "Similar violations by members of the bar in future cases may well be dealt with more severely. * * * [In this case,] the sanction of public censure is deemed adequate but should not necessarily be construed as a precedent in all future cases." *Id.*

The censured attorney in *In re Dowdal,* 284 N.W.2d 394 (Minn.1979), submitted an otherwise true affidavit to the court to which he had signed his client's name. *Id.* at 394. The court ordered a public reprimand in *Dowdal* based in part on the client's knowledge and authorization of his attorney's conduct. *Id.* The decision also recognizes the action as an "isolated instance of misconduct." *Id.*

*In re Cohen,* 354 N.W.2d 429 (Minn. 1984), also involved documents with true contents, but false signatures. The public reprimand was issued in *Cohen* because the respondent-lawyer allowed a non-lawyer staff member to sign his name to various pleadings and affidavits. *Id.* at 430.

The three cases above are easily distinguishable from the facts before the court at this time. The attorneys' conduct in *Finley, Dowdal* and *Cohen* did not involve the same degree of deception as Attorney Boyd's misconduct. This case is not an example of a document containing true facts, but a false signature. The attorney here fabricated a deed and caused its forgery. When the deed was filed, a fraud was perpetuated on the legal system. The fact that the bank given the false title opinion did not suffer any economic harm was merely fortuitous. Respondent should

have realized that if the bank would ever have to foreclose, it would incur additional expenses due to the title defect. The conduct here clearly is more severe than the acts in the previous cases which resulted only in public reprimands.

*Finley, Dowdal* and *Cohen* were likewise distinguished by *In re Holmay,* 399 N.W.2d 564 (Minn.1987). The court in *Holmay* issued a 30–day suspension when an attorney forged and falsely notarized a client's signature on a petition for dissolution of marriage. *Id.* at 565. *Finley* was distinguished because Finley, unlike Holmay, believed that the signatures he notarized were genuine. *Id. Cohen* and *Dowdal* involved forgeries where the individual whose signature was forged gave the attorney permission to do so. *Id.* Recognizing that Holmay's conduct in forging the documents, submitting them to the court and serving them on the opposing party was more serious than the conduct in the public reprimand cases, the court ordered a 30–day suspension. *Id.*

To understand the rationale for only a 30–day suspension in *Holmay,* it is helpful to examine the subsequent case of *In re Kaminsky,* 407 N.W.2d 670 (Minn.1987). Kaminsky, like Holmay, submitted forged documents (affidavits in *Kaminsky* ) to the court and opposing counsel. *Id.* at 670. The petition against Kaminsky also involved a count of neglect. *Id.* Nevertheless, a 30–day suspension was ordered.

Although the *Holmay* and *Kaminsky* decisions do not explain why the discipline ordered was relatively modest, we point out that, in those cases, the contents of the forged documents were true. To that extent, the forgeries, though technically fraudulent, were harmless and the result of convenience, not a criminal intent.

The most extreme forgery case in Minnesota thus far is *In re Danna,* 403 N.W.2d 239 (Minn.1987). Danna submitted false affidavits to the court, concealed the forgery from his client and attempted to block the Lawyers Professional Responsibility Board investigation by giving perjured testimony. *Id.* at 240. Recognizing that Danna's conduct was more severe than the false notarization in *Holmay,* the court ordered a 90–day suspension. *Id.* at 241.

The contents of the affidavits signed by Danna with his client's name were essentially true. *Id.* at 240. The referee had considered this fact "in mitigation but not exoneration." *Id.* Taking into account the seriousness of Danna's misconduct and previously issued private censure and admonitions for neglect of client matters, this court, in ordering the 90–day suspension, cautioned: "If the following sanctions do not serve to deter such misconduct, we will impose more serious sanctions in the future." *Id.* at 241.

Respondent's conduct is distinguishable from that in *Danna* and, therefore, warrants more severe discipline. Danna's initial deception involved only the execution of the documents; the contents were essentially true. The most disturbing deception in *Danna* was that he subsequently lied to the board. Conversely, Boyd's conduct was blatantly fraudulent and deceptive until the time he was caught. Unlike *Danna* and the other forgery/false notarization cases, the contents of the warranty deed were not essentially true; they were totally fabricated by the respondent. Moreover, respondent in this case involved his own client and his secretary in his illegal conduct by coaching the client to practice her father's signature and then directing the secretary to notarize it. His later cooperation in the disciplinary proceedings should not shield him from realizing the significance of the dishonest nature of his acts. The back-dating and forgery of the deed and issuance of a false title opinion based on the forgery are acts more grievous and deceptive than any of the facts to come before the court in "analogous" cases thus far.

In addition to the severe nature of respondent's acts, the timing of his conduct must be considered. Mr. Boyd had received three previous disciplinary admonitions between January 1985 and October 1986. This prior discipline is used to help determine the appropriate sanction in this case.

The admonition issued to respondent on January 16, 1985, resulted from a misrepresentation he made to another attorney regarding satisfaction of an attorney lien. This admonition was issued around the time that respondent prepared the false deed. Despite the admonition, Boyd carried out the fraud he had begun and approximately a month after receiving the admonition, he provided First State Bank with the false title opinion. Clearly, the admonition for misrepresentation did not deter respondent from making future misrepresentations regarding the warranty deed. Even the two admonitions that followed on April 1, 1986 and Ocober 21, 1986, did not persuade him to admit or correct the false deed and title opinion.

One goal of attorney discipline is to deter misconduct by members of the bar generally and by the respondent specifically. *In re Daffer*, 344 N.W.2d 382, 386 (Minn. 1984). The timing of Attorney Boyd's misconduct in conjunction with the admonitions he received would seem to justify a fairly severe sanction in order to deter future misconduct on his part.

In addition to the nature and timing of respondent's conduct, it would generally be appropriate to consider possible mitigating factors. In this case, however, the issue of mitigation has already been determined by the referee. Because the referee's findings of facts and conclusions of law are deemed conclusive, it is unnecessary to determine whether "substantial personal mitigating circumstances including alcoholism" were a direct cause of respondent's misconduct. The referee has already concluded that they were not.

According to the referee, mitigating factors which favor Boyd include his admission of misconduct, cooperation in these proceedings and sincere and convincing expressions of remorse. These mitigating factors must be balanced with the severe nature of respondent's misconduct and the apparent ineffectiveness of the prior admonitions.

Accordingly, it is the order of this court that all terms of the respondent's and director's stipulation, except the period of suspension, are incorporated in this order. Respondent is ordered suspended from the practice of law in the State of Minnesota for 6 months from the date of this order rather than the 4 months recommended by the referee.

In addition to the 6–month suspension, respondent may be reinstated only on the following conditions:

1. The requirements of R.Law.Prof. Resp. 18 are waived except as modified hereafter.

2. As recommended by the chemical dependency evaluator, respondent shall enroll in the out-patient chemical dependency treatment program at either St. Paul Ramsey Hospital or Metropolitan Medical Center.

3. Respondent shall attend either Alcoholics Anonymous or Lawyers Concerned for Lawyers on a weekly basis and provide written proof of his attendance to the director's office.

4. Respondent shall remain abstinent from alcohol.

5. Respondent shall pay the director $750 in costs pursuant to R.Law.Prof. Resp. 24(a) and $270 as disbursements (court reporter appearance fee for the referee hearing) pursuant to R.Law. Prof.Resp. 24(b).

6. Respondent shall comply with R.Law.Prof.Resp. 26.

7. Respondent is current in his continuing legal education requirements.

8. At least 15 days prior to the expiration of the suspension period, respondent shall file an affidavit with the Clerk of Appellate Courts and the director's office verifying his compliance with the above conditions. Respondent shall then be reinstated by the court's written order unless an objection is filed by the director.

9. Upon his reinstatement to the practice of law, respondent shall be placed on probation for a period of 2 years under the supervision of a Minnesota attorney nominated by respondent and approved by the director and subject to the following conditions:

a. Respondent shall complete the outpatient chemical dependency treatment program and provide a copy of the program's discharge summary to the director's office.

b. Respondent shall continue weekly attendance at either Alcoholics Anonymous or Lawyers Concerned for Lawyers and provide written proof of his attendance to the director's office.

c. Respondent shall successfully complete the professional responsibility portion of the multistate bar exam within 1 year of the date of the court's suspension order.

d. Respondent shall remain abstinent from alcohol.

10. If at anytime during the probation, the director concludes that respondent has not complied with the terms and conditions of the probation or has committed further violations of the Rules of Professional Conduct, the director may, after providing respondent an opportunity to be heard, file a petition for revocation of respondent's probation and for further disciplinary action without the necessity of panel proceedings.