**In re Petition for Disciplinary Action against Harlan P. KLEIN, an Attorney at Law of the State of Minnesota.**

**No. C5-88-1968.**

Supreme Court of Minnesota.

July 21, 1989.

William J. Wernz, Director of The Office of Lawyers Professional Responsibility and Thomas C. Vasaly, First Asst. Director, St. Paul, for appellant.

Harlan P. Klein, West St. Paul, for respondent.

POPOVICH, Chief Justice.

On September 15, 1988, the Director of the Office of Lawyers Professional Responsibility ("Director") filed a petition for disciplinary action against Harlan P. Klein ("Respondent"). The petition alleged respondent intentionally obtained a default judgment through the use of deceit and false statements made under oath. Respondent denied the charges and this court referred the matter to the Honorable Marquis L. Ward as referee. Judge Ward conducted a hearing and on January 27, 1989, issued findings of fact, conclusions of law and a recommendation for the following disciplinary action: a) suspension for 60 days; b) required reimbursement to the adverse party for her expenses caused by respondent's actions; and c) following reinstatement respondent be placed on supervised probation for a period of two years.

The Director agreed with the referee's recommendation regarding reimbursement of the adverse party, but argued that respondent be suspended for a period of six months and the reinstatement procedures provided by Rule 18, Rules on Lawyers Professional Responsibility ("RLPR") not be waived. Respondent did not order a transcript of the referee's hearing in this case, thus the findings of the referee are conclusive. Rule 14(e), RLPR. Neither did respondent file a brief, but he did appear for oral argument.

## I.

Respondent was admitted to practice law in the State of Minnesota in 1973 and is a sole practitioner in West St. Paul, Minnesota. He had been admonished by the Director on two prior occasions. On January 20, 1986, respondent was admonished for assisting his client in a marriage dissolution proceeding to create a wage assignment as a subterfuge to avoid wage withholding for court-ordered child support. On August 30, 1983, respondent was admonished for failing to pay a judgment against him for a court reporter's bill, which respondent had previously assured would be paid immediately.

The current disciplinary proceedings arose from respondent's involvement in the divorce of Leo and Dorothy Klein. Respondent is Leo Klein's brother. In 1986, the Kleins were married and living in West Germany where they were both teachers. On April 29, 1986, Leo Klein wrote respondent indicating he wished respondent to represent him in an action for dissolution of marriage. Respondent discussed the matter with Leo by telephone and on June 5, 1986, respondent mailed Leo a copy of a summons and petition for dissolution of marriage together with a proposed stipulation. The proposed stipulation did not provide for any reimbursement to Dorothy for money and property which Leo had confiscated from her without justification, including approximately $12,000 of Dorothy's retirement benefits which was a premarital asset.

The summons and petition were served on Dorothy in West Germany on June 11, 1986. Dorothy did not answer the petition, nor did she sign the proposed stipulation. Later on in June, Leo quit his job in West Germany and returned to Minnesota. Shortly thereafter, Dorothy also left West Germany on a leave of absence and traveled to the state of Washington, where she had previously resided. Respondent did not file the petition and summons during this time. In July 1986, before Dorothy's time to answer Leo's petition had expired, Dorothy and Leo reconciled in Washington. In reliance upon this reconciliation, Doro-

thy quit her job in West Germany and the couple continued to reside in Washington for approximately eight months.

In March 1987, Leo left Dorothy and returned to Minnesota. When he left, Leo told Dorothy he was undecided about their marriage. Three weeks later, Dorothy retained Washington attorney Katrin Frank to commence dissolution proceedings. Frank verified with the court administrators in several divisions in Dakota County, Minnesota, that no Minnesota petition had been filed. Frank then filed a dissolution action in the state of Washington on April 6, 1987. The Washington summons and petition for dissolution of marriage and related documents were served on Leo on April 10, 1987.

Leo then met with respondent and showed him the Washington dissolution papers. They agreed to attempt to obtain a default judgment against Dorothy in Minnesota as quickly as possible. On Monday, April 14, 1987, respondent filed the Minnesota summons and petition and scheduled a default hearing for April 27, 1987. The documents he filed in 1987 were not the same as those served on Dorothy in 1986. The petition served on Dorothy was dated June 5, 1986, venued in the First Judicial District, Division 2, and did not contain either a signed or blank verification page. The petition respondent filed in court was dated June 3, 1987, and venued in Division 3. Respondent had retyped the summons and petition prior to filing them. Respondent also filed a verification page signed by Leo, notarizing Leo's signature and indicating June 22, 1986, as the date.

On April 13, 1987, respondent telephoned Frank's office and left a message that a dissolution proceeding was pending in Minnesota and Minnesota dissolution papers had been served on Dorothy in 1986 while she was living in Germany. The message asked Frank to call him. Respondent then wrote to Frank on April 14, 1987, stating Dorothy was in default under Minnesota law and he intended to have a decree entered shortly. Respondent stated he would expect to receive a telephone call from Frank. At no time before the default

hearing date of April 27, 1987, did respondent advise Dorothy Klein or her attorneys of the time or place of the scheduled hearing.

On April 16, 1987, Frank attempted to return respondent's telephone call. The first attempt resulted in a busy signal. The second call was unanswered. After receiving respondent's letter on April 17, Frank helped Dorothy acquire Minnesota attorney Joseph Hautman to represent her in Minnesota. Frank also tried to call respondent again on April 17, but received no answer. On April 20, Frank called a fourth time and reached respondent's answering machine. Frank left a message for respondent stating her name, her client's name, that Joseph Hautman would represent Dorothy in Minnesota and Hautman's phone number.

Hautman also made several phone calls to respondent during this time period and left several messages on respondent's answering machine. On April 22, 1987, Hautman wrote respondent requesting respondent call regarding the status of the dissolution matter and indicating he would be representing Dorothy Klein's interests in the proceedings.

On April 23, 1987, respondent telephoned Hautman's office when Hautman was not in. Respondent left a message stating he called regarding the Klein dissolution and he would only be available from 11:00 a.m. to noon the following day. On April 24, 1987, Hautman called respondent's office at 11:05 a.m. and left a message on respondent's answering machine. During the next hour, Hautman telephoned respondent's office at least twenty times without success. Respondent testified he was actually in court all day April 24 on a previously scheduled criminal matter, suggesting he knew he would not be in the office at the time he told Hautman to call. Hautman continued calling respondent without success until April 27, 1987. On April 27, Hautman wrote respondent again, renewing his request for information and stating some bases for defense to an action.

On or about April 23, 1987, Leo signed an affidavit of no answer, drafted and notarized by respondent. The affidavit stated that "no answer or other pleading has been received by or served upon said plaintiff [Leo J. Klein] or his attorney, and defendant, Dorothy Klein has not otherwise defended in the action * * *." On April 27, 1987, respondent appeared before the Honorable Lawrence J. Lenertz at the default hearing. No one appeared on behalf of Dorothy. Respondent presented the April 23, 1987, affidavit to the court and elicited the following testimony from Leo:

Q: Now at the time this action was started, which I believe was in June of last year, had either you or your wife started any other action for dissolution or divorce?

A: No, we had not.

Q: This is the only action pending?

A: That is correct.

Q: And I understand that your wife had not interposed any answer to this matter and that you and your wife have split up the personal property and that sort of thing?

A: We split up everything completely.

Respondent did not inform the court he had received communications from Dorothy's attorneys, the documents filed in court were not identical to those served on Dorothy, or that Dorothy was claiming Leo had taken possession of a significant amount of her premarital assets.

Respondent submitted proposed findings, conclusions and an order for judgment which did not provide for the entry of a money judgment in favor of either party. One proposed finding stated: "At the commencement of this action no separate proceedings for dissolution had been commenced by either party in this state or elsewhere, and no such proceeding was pending." Judge Lenertz signed respondent's findings.

Respondent immediately caused the entry of a judgment and decree of dissolution on April 27, 1987. Upon returning to his office, he wrote to Dorothy Klein informing her of the entry of judgment. On May 4, 1987, respondent wrote Hautman informing him of the judgment. On the same day, Hautman succeeded in reaching re-

spondent by telephone at which time respondent informed him verbally of the judgment. Hautman then moved to vacate the default judgment at a hearing before the Honorable Thomas M. Murphy on June 3, 1987. At that hearing respondent falsely stated he did not know Dorothy had retained Hautman until after the default hearing, he thought in obtaining the default judgment he was doing "a big service to both of the parties," and if Dorothy's attorneys had given him notice he would have acted differently.

On June 12, 1987, Judge Murphy vacated the property provisions of the judgment and decree, but ordered the dissolution remain final. On August 11, 1987, the Klein dissolution went to trial before the Honorable Raymond Pavlak. Dorothy flew to Minnesota to attend. Dorothy had earlier dismissed the Washington petition in reliance on the reopened Minnesota proceedings. On November 16, 1987, Judge Pavlak issued findings of fact, conclusions of law and an order for judgment. Judge Pavlak found that Leo had confiscated Dorothy's premarital retirement benefits and assets of the marriage and to reimburse her ordered judgment against Leo in the sum of $21,736.90. A portion of this judgment, $1,170.00, represented legal fees incurred in Minnesota by Dorothy as a result of Leo's fraud on the court. The final judgment of dissolution was entered on January 11, 1988, and was not appealed by either party.

Dorothy Klein filed an ethics complaint against respondent who responded on January 13, 1988: "At least in all honesty, I had not been contacted by anyone prior to the time I had the decree entered." On June 2, 1988, respondent and an attorney from the Director's office discussed the possibility of resolving the charges by stipulation although no stipulation was actually presented. Respondent led the Director's office to believe he would telephone later that day to discuss the matter. He did not call until June 6 when he left a message. On June 6, 10, and 13 the Director's office left messages on respondent's answering machine requesting respondent to return the calls. Respondent did not return the calls. On June 14, 1988, the Director's office wrote respondent requesting he contact the Director's office on June 20 or 21 but respondent did not.

On June 10, 1988, the Director's office mailed respondent Charges of Unprofessional Conduct, Notice of Pre–Hearing Meeting, and Notice of Panel Assignment. The Notice of Pre–Hearing Meeting informed respondent he must attend the meeting on June 28, 1988 and failure to attend might be a separate ground for disciplinary action. The notice also requested, pursuant to Rule 25, RLPR, that respondent bring his file regarding the Klein dissolution matter to the prehearing meeting so it could be photocopied. Respondent neither attended the prehearing meeting nor provided the Klein file.

The Director subsequently filed supplemental charges against respondent relating to his failure to cooperate with the Director's investigation and scheduled a second prehearing conference for July 21, 1988. On that date respondent appeared, provided his file for photocopying and participated in the prehearing conference.

The referee found a number of aggravating factors relating to respondent's conduct including: (1) respondent's action in this matter arose out of a dishonest motive, *i.e.*, an attempt to obtain a favorable judgment for his brother by precluding Dorothy Klein from being able to assert her defenses and claims; (2) respondent evinced a lack of cooperation with the Lawyers Professional Responsibility Board; (3) respondent had not evinced any remorse for his actions in this matter; (4) the victim in this matter was in a vulnerable position; and (5) respondent's previous action in a dissolution matter, for which he was admonished, was similar to his behavior in this case.

II.

The purpose of disciplining attorneys is to protect the public and deter future misconduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988). This court considers the nature of the misconduct, the cumulative weight of the disciplinary violations and the

harm to both the public and the legal profession in determining the appropriate discipline. *In re Schaefer*, 423 N.W.2d 680, 683 (Minn.1988). Recommendations for discipline of an attorney made by a referee are afforded great weight by this court; however, the court alone has the final responsibility to determine the appropriate discipline. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987); *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984). In fact, "[it] is not unusual for this court to substitute its judgment for referees' recommendations." *In re Boyd*, 430 N.W.2d 663, 664 (Minn. 1988).

Appearing before this court, respondent argued he had made a settlement with the Director's office in the early stages of the investigation which the Director had failed to honor. The Director replied that the possibility of settling the case had been explored, but no settlement had been agreed upon. Because respondent failed to order a transcript of the hearing in this case, the referee's finding that no stipulation had actually been presented to respondent is conclusive.

The only issue before this court, then, is to determine the appropriate discipline for respondent's misconduct. The referee recommended a 60–day suspension and two years' probation; the Director requests a six month suspension with reinstatement under Rule 18, RLPR. The referee also found there are no factors which would be considered mitigating circumstances.

This court has previously imposed a suspension of longer than 60 days on several occasions where the misconduct involved misrepresentations to a court. In *Schmidt*, the attorney was publicly reprimanded and suspended for six months. 402 N.W.2d at 550. Schmidt commenced a personal injury action which incorrectly stated the date of injury and at the hearing on opposing counsel's motion for sanctions Schmidt made numerous misrepresentations to the court. *Id.* at 548. In reaching our decision we said: "[A]n attorney who deliberately deceives the court is guilty not only of obstructing the administration of justice but also of subverting that loyalty to the truth without which he cannot be a lawyer in the real sense of the word." *Id.* at 548–49 (quoting *In re Nilva*, 266 Minn. 576, 583, 123 N.W.2d 803, 809 (1963)).

We imposed a six month suspension in *Boyd* for fraudulent acts against a court. Boyd had prepared a false deed, caused it to be forged, notarized and filed, and later issued a false title opinion based on the deed. We said: "When * * * a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers to the end that the system of justice will not be undermined, courts do not hesitate to impose severe discipline." *Boyd*, 430 N.W.2d at 665 (quoting *In re Schmidt*, 402 N.W.2d 544, 548 (Minn.1987)). Although Boyd was suspended for six months, the requirements of Rule 18, RLPR were waived. *Id.* at 667.

This court has imposed lesser suspensions in cases where attorneys have submitted fraudulent documents. For example, the court issued 30–day suspensions for one attorney who forged and falsely notarized a client's signature on a petition for dissolution of marriage, *In re Holmay*, 399 N.W.2d 564, 565 (Minn.1987), and another who submitted forged documents to the court and opposing counsel, *In re Kaminsky*, 407 N.W.2d 670, 670 (Minn.1987). We explained the lesser discipline in these two cases by noting that the contents of the forged documents were true. Thus, although the documents were technically fraudulent, there was no criminal intent evident. *Boyd*, 430 N.W.2d at 666.

This matter more closely resembles *Schmidt* and *Boyd* than *Holmay* or *Kaminsky*. Respondent not only fraudulently changed dates on court documents, but also falsely stated to the court that he was unaware Dorothy Klein was represented by counsel or that any other divorce proceedings were pending. Respondent exhibited a lack of remorse for his actions and at oral argument before this court said he did not feel he had done anything wrong.

We agree with the Director's recommendation that respondent should be indefinitely suspended with the opportunity to apply for reinstatement after a period of six

months from the filing of this opinion. Respondent is also required to immediately reimburse Dorothy Klein for all of her expenses incurred in litigating her divorce in Minnesota including $600 for airfare, the cost of food and lodging associated with the hearing of August 11, 1987, and attorney fees in the sum of $1,170. We decline to adopt the Director's recommendation that respondent comply with Rule 18, RLPR, for reinstatement after suspension. Respondent will be required, however, to successfully complete such written examination as may be required for admission to the practice of law by the State Board of Law Examiners on the subject of professional ethics and responsibility. In addition, respondent will be required to satisfy the requirements imposed under the rules of the Board for Continuing Legal Education.

Indefinite suspension is ordered, with the right to petition for reinstatement after six months.