In re Petition for DISCIPLINARY AC-
TION AGAINST T. Jay SALMEN, an
Attorney at Law of the State of Minne-
sota.

No. C5–91–670.

Supreme Court of Minnesota.

May 8, 1992.

William J. Wernz, Director of the Office
of Lawyers Professional Responsibility,
Thomas C. Vasaly, First Asst. Director, St.
Paul, for appellant.

Jack S. Nordby, Meshbesher & Spence,
Ltd., Minneapolis, for respondent.

PER CURIAM.

This matter comes to us on the petition
of the Director of the Lawyers Profession-
al Responsibility Board for disciplinary ac-
tion against respondent T. Jay Salmen, who
was admitted to the practice of law in 1973.
Having considered allegations of profes-
sional misconduct arising out of Salmen's
representation of a client who was also
Salmen's investment partner, the referee
concluded that Salmen was guilty of unpro-
fessional conduct justifying suspension.

Over a period of several years Salmen
and John Bartz entered into a number of
joint real estate investments. In 1985
Bartz withdrew from their general partner-
ship which owned and operated a building
in Minnesota City. Bartz conveyed his in-
terest in the property to Salmen and Sal-
men gave Bartz a promissory note in the
amount of $27,736. Both Bartz and Sal-
men aver that, in conformity with their
customary practice, when Bartz withdrew
from the partnership he promised to pay
Salmen one-half of the loss if the invest-
ment turned sour.

In June 1989 Bartz retained Salmen to
represent him in a marital dissolution pro-
ceeding. In September 1989 Bartz claimed
in answers to interrogatories that he owed
Salmen $83,750 in connection with the
Minnesota City investment, and copies of a
letter to that effect from Salmen to Bartz
dated May 3, 1988 and of a promissory note
dated December 15, 1988 in the amount of
$83,750 were attached as evidence of the
debt. Mrs. Bartz had not previously been
aware of the existence of such a debt,
which amounted to one and one-half times
Bartz's annual income. Her lawyer re-
peatedly but unsuccessfully asked for veri-
fication of the debt and for the original of
Salmen's letter. Except for the mortgage
on the Bartz residence the debt to Salmen
was the largest single debt involved in the
proceeding, and its size constituted an ob-
stacle to agreement concerning division of
the marital property.

When it became apparent that the matter
would be tried and that Salmen would be
called as a witness, Salmen's firm with-
drew as counsel and referred Bartz to oth-
er counsel. Salmen was served with a sub-
poena duces tecum, but when he first ap-
peared to testify, he did not bring with him
any record of the transactions concerning
the Minnesota City investment property.

He testified that the $83,750 promissory note and his letter dated May 3, 1988 were both genuine, but the copy of the letter which Salmen produced on his second day of testimony prompted an offer of proof that two of the attorneys whose names were partially legible on that copy had not been admitted to the practice of law until October 1988, some five months after the letter was purportedly written. The trial court refused Salmen's request to return to the witness stand to clarify his testimony. Subsequently, the parties entered into a stipulated property division in which Bartz received no credit for the alleged indebtedness to Salmen.

The referee found by clear and convincing evidence that the letter could not have been written on May 3, 1988 because the printer had not delivered the stationery on which it was typed until sometime the following November. He also found that although the letter was not originally designed to defraud Mrs. Bartz or the court, Salmen's testimony with respect to the letter was false and constituted a fraud on both. The referee concluded that Salmen's conduct violated Minnesota Rules of Professional Conduct 3.3(a)(1), 3.3(a)(4), 3.4(b), 8.4(c) and 8.4(d), and he recommended that Salmen be suspended for six months.

We have on numerous occasions remarked that the purpose of disciplinary action is not to punish but rather is to guard the administration of justice and to protect the courts, the legal profession and the public and that the nature of the misconduct, the harm to the public and to the legal profession must be considered when determining the appropriate discipline. *See, e.g., In re Shaughnessy*, 467 N.W.2d 620 (Minn.1991). Our legal system depends on the truthfulness of the testimony of witnesses and false testimony strikes at the very heart of the administration of justice. Therefore, we look on Salmen's misconduct as a serious breach of the rules of professional conduct and we are of the opinion that a longer period of suspension than that recommended by the referee is required.

It is, therefore, the judgment of this court:

(1) That commencing ten (10) days from the date of issuance of this opinion respondent T. Jay Salmen is indefinitely suspended from the practice of law for a period not less than one year.

(2) That the reinstatement hearing provided in Rule 18, Rules on Lawyers Professional Responsibility, is not waived and reinstatement shall be conditioned upon the following:

(a) Respondent's successful completion of the professional responsibility portion of the bar examination pursuant to Rule 18(e), Rules on Lawyers Professional Responsibility;

(b) Respondent's satisfaction of the continuing legal education requirements contained in Rule 18(e), Rules on Lawyers Professional Responsibility; and

(c) Respondent's compliance with Rule 26, Rules on Lawyers Professional Responsibility.

(3) That the respondent shall pay to the Director the sum of $750.00 in costs pursuant to Rule 24, Rules on Lawyers Professional Responsibility.

IT IS SO ORDERED.