**In re the Petition for DISCIPLINARY ACTION AGAINST Dennis W. STRID, an Attorney at Law of the State of Minnesota.**

No. C4–88–1993.

Supreme Court of Minnesota.

Aug. 7, 1992.

Patrick J. Burns, Sr. Asst. Director, St. Paul, for appellant.

David W. Lee, Richfield, for respondent.

## OPINION

PER CURIAM.

Respondent Dennis W. Strid is before this court on a disciplinary matter for the second time since his admission to practice in 1962. On May 12, 1989, he was publicly reprimanded and placed on two years probation for misappropriation of client funds. *In re Strid*, 439 N.W.2d 721 (Minn.1989). The first disciplinary proceeding concerned, in part, respondent's mishandling of his father's financial affairs in his role as guardian. That proceeding involved the same assets at issue here—the homestead property and the contract for deed. The present petition involves a loan transaction and alleges conflict of interest and professional misconduct. The alleged misconduct in this matter occurred before the first disciplinary proceeding but came to light in May 1989 when respondent became permanently disabled from a heart attack and stopped making payments on the loan. The referee found facts supporting the alle-

gations and recommended a one-year suspension. Respondent challenges the findings and conclusions as clearly erroneous and challenges the recommended discipline as excessive.

The referee found the facts as follows: Respondent was the sole shareholder, officer and director of Logan Financial Company ("Logan") which was set up by respondent to handle his mother's financial affairs. On June 29, 1984, Logan borrowed $15,000 from Herschel Swain, a diabetic with failing eyesight. Logan, by respondent, gave Swain a note and a mortgage on property which his parents had sold on a contract for deed. Respondent did not tell Swain about his parent's ownership nor about the contract for deed. Respondent knew at the time he executed the mortgage that neither he nor Logan had title to the property. Swain believed that he was making a loan directly to respondent and that respondent was the owner of the house. Swain would not have made the loan without a mortgage to serve as security because he knew that respondent had financial difficulties in the past.

The transaction was completed in the office of attorney Norman Dahl with whom respondent had shared office space. Respondent paid Dahl a $1,500 finder fee for arranging the loan. Respondent had represented Swain between 1973 and 1978 in a series of transactions involving a business owned by Swain and in a tax matter in 1983, but there is no allegation that respondent was acting as Swain's attorney in the loan transaction. Dahl had also represented Swain as a client in the past but testified that he was not representing him in this transaction. Swain thought Dahl was his lawyer in the loan transaction. He was not concerned with the technicalities, however, because "I thought I had two attorneys there, that either one of them would protect me." Respondent took the proceeds of the loan, paid Dahl and transferred the remaining $13,500 from his trust account to his personal Merrill Lynch account. He never recorded the mortgage to Swain.

On August 11, 1984, respondent's father died and his father's interest in the contract for deed passed directly to respondent's mother, Mildred Strid, by right of survivorship. On November 1, 1984, she transferred title to Logan. Logan subsequently sold the property to a third party, Gate Financial Corporation ("Gate"). On February 22, 1985, respondent filed simultaneously the documents passing title from Mildred Strid to Logan and from Logan to Gate thus eliminating the possibility of the Swain mortgage attaching. Respondent intentionally did not inform Swain that Logan had sold the property to Gate. He continued making payments on the Swain loan.

Only when respondent stopped making payments on the loan in 1989 after the disabling heart attack did Swain learn (1) that neither respondent nor Logan had any ownership interest in the property when it was mortgaged and (2) that the property had been sold to Gate in 1985. Approximately $14,000 is still owing on the promissory note, and Swain now has no security with which to enforce payment. Respondent insists he has done nothing wrong and that he spent $29,000 of his own money taking care of his parents, in whose behalf, he says, he did all these things. Both parents are now dead.

The referee concluded that respondent had engaged in fraud and perpetrated fraud through his solely-owned corporation, Logan, in violation of Rule 8.4(c), Minn.R.Pro.Conduct.

■■■ An attorney commits professional misconduct if the attorney engages in "conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 8.4(c), Minn.R.Pro.Conduct. The elements of fraud, under Minnesota law, are

a false representation pertaining to a material past or present fact susceptible of human knowledge, knowledge by the person making the representation of its falsity or assertion of it without knowledge of its truth or falsity, an intention

that the other person act on it, or circumstances justifying the other person in so acting, and the other person being in fact reasonably induced to act upon the representation, relying upon it and suffering damage attributable to the misrepresentation.

8A Dunnell Minn. Digest 2d *Fraud* § 1.00 (3d ed. 1979).

The referee concluded that respondent perpetuated a fraud when he

offered a mortgage to property that was not in the name of the corporation and which was, in fact, titled to his parents at the time, subject to a contract for deed. He subsequently acquired title to the property, in Logan's name, from his surviving parent. He, through Logan, sold the property to Gate Finance Corporation, knowing at the time that Logan had given a mortgage to secure a loan of $15,000 from Swain, and that the mortgage would be defeated by transfer of the property from Logan to Gates [sic].

Respondent contends that these findings are incomplete and do not support the conclusion of fraud.[1] The standard of proof in an attorney disciplinary proceeding is clear and convincing evidence. *In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989). On review, this court will not set aside the findings of fact of a referee unless they are clearly erroneous. *Id.*

The record before us fully sustains a finding of fraud. Respondent made a false representation pertaining to a material past or present fact susceptible of human knowledge when he signed the mortgage containing an express covenant of title that he was "lawfully seized of said premises [with] good right to sell and convey the same." In fact, the property was not conveyed from Mildred Strid to Logan until November 1, 1984, and the transaction was not recorded until February 22, 1985.

Respondent knew the representation was false. He signed the mortgage form and the promissory note between Logan and Swain knowing that Logan had no interest in the property listed. There was no notation on either the mortgage or the note to indicate that Logan did not yet have an interest in the property listed or to indicate that the property was subject to a contract for deed. Furthermore, respondent intended that Swain loan him money on the basis of his misrepresentation regarding title to the property. He told Dahl he was willing to give a mortgage if it was necessary to secure the loan.

Swain was reasonably induced to act upon the representation, relied upon it and suffered damage attributable to the misrepresentation. He would not have made the loan without a mortgage. He believed that respondent had title to the real estate when he loaned him the money. At the time he delivered the check, Swain was given documents that had been signed and notarized but that he could not read because of his eyesight. He was not concerned when he discovered that the note and mortgage were from Logan rather than respondent because he thought he had a valid mortgage on the townhouse regardless of who owned it. Swain was also unaware that the property was subject to a contract for deed. Swain's loan, on which respondent still owes approximately $14,-000, is unsecured.

Respondent claims that no misrepresentation occurred because Swain knew or should have known through Dahl that Logan did not have title to the property being mortgaged. Respondent knew, however, that he had himself hired Dahl to represent him in this matter and that Dahl could not represent both respondent and Swain. Respondent claims that he had no duty to protect Swain's interest because no fiduciary relationship existed between them. Conduct involving fraud need not occur in a fiduciary relationship to be professional misconduct.

---

1. Because respondent ordered a transcript, the referee's findings and conclusions are not conclusive. Rule 14(e), Minn.R.Law.Prof.Resp.

Respondent asserts further that a mortgagee is not entitled to rely on representations or warranties of ownership in a mortgage document, citing to Minn.Stat. § 507.-16. This statute does not apply where, as here, the covenant in the mortgage is an express rather than an implied covenant. Nor does the doctrine of after-acquired title protect respondent from a determination that he perpetrated fraud.

As to respondent's remaining defenses, there was insufficient evidence to establish the existence of a purchase money mortgage which may have defeated Swain's security interest. In addition, any obligation respondent may have had to maintain the confidences of his mother, where his mother was a stranger to the transactions, did not override any duty he may have had to inform Swain of the sale of the property. Finally, fraud does not require an intent to cause damage that is contemporaneous with the false representation. It requires only an intent, at the time a false representation is made, that the other person act on the false representation. We find respondent's proffered defenses to be without merit. Clear and convincing evidence sustains the findings and conclusions of the referee that respondent engaged in conduct constituting professional misconduct.

■■■ Discipline is imposed to "protect the courts, the legal profession, and the public, guard the administration of justice, and deter similar misconduct." *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). To determine appropriate discipline we must weigh the "nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the damage to the profession and the judicial system." *In re Levenstein*, 438 N.W.2d 665, 668 (Minn.1989). The specific discipline imposed depends not only on the facts of the misconduct, but on any aggravating or mitigating circumstances. *Isaacs*, 451 N.W.2d at 211. Additionally, when an attorney has previously been before this court on a disciplinary matter, the "discipline to be imposed must be reviewed in

light of earlier misconduct." *In re Getty*, 452 N.W.2d 694, 698 (Minn.1990).

■■■ Respondent's first disciplinary proceeding resulted in his being placed on probation. The present petition for discipline was filed before he had completed that probation. However, the misconduct here involved occurred prior to his first disciplinary proceeding. Therefore, the fact that this is the second proceeding does not itself show a disregard for the seriousness of the prior reprimand nor is it a violation of the probation. It does indicate, however, a lack of candor during that first proceeding, particularly since that proceeding involved some of the same assets at issue here.

Respondent has refused to acknowledge the wrongful nature of his conduct. He has attempted to place responsibility for any wrongdoing on Dahl, Swain and his mother, now deceased. He has admitted that his acts were intentional but has repeatedly asserted that they were legal and were made after consideration of legal issues and what he characterized as conflicting ethical problems. It is not clear to what extent respondent personally profited from his alleged misconduct because his personal finances were enmeshed with those of his parents.

The vulnerability of the individual harmed is another factor to be considered. At the time of the transaction, Swain was legally blind and unable to read without special apparatus. He is uneducated and relatively unsophisticated. It was not unreasonable for Swain to believe that both respondent and Dahl would look out for his interests as they had previously when they represented him.

Respondent has made no restitution and is probably unable to do so. He is permanently disabled, is in poor health and is not currently practicing law.

Although no two cases are alike, this court looks to prior decisions for guidance. *In re Peterson*, 456 N.W.2d 89, 93 (Minn. 1990). In this case we find *In re Hen-*

*drickson,* 464 N.W.2d 722 (Minn.1991), *In re Clasen,* 443 N.W.2d 190 (Minn.1989), and *In re Boyd,* 430 N.W.2d 663 (Minn. 1988) instructive. Hendrickson obtained loans from clients without disclosing conflicting interests, failed to prepare or record mortgages as promised and failed to make timely payments. *Hendrickson,* 464 N.W.2d at 722. No fraud was alleged, however, and this was Hendrickson's first appearance before the disciplinary board. He received a public reprimand and was placed on probation. *Id.* at 723.

Boyd prepared a false deed and caused it to be forged, notarized and filed. He later issued a false title opinion based on the same deed. *Boyd,* 430 N.W.2d at 663–64. This was his first appearance before the disciplinary board and the referee noted that Boyd had cooperated in the disciplinary process and "made sincere and convincing expressions of remorse." *Id.* at 664. He was suspended from the practice of law for 6 months. *Id.* at 667.

Clasen offered high interest rates to induce unsophisticated Hmong investors to lend him large sums of money. He offered as security "second mortgage" notes that were accompanied by mortgages of questionable or no value. *Clasen,* 443 N.W.2d at 190. We disbarred Clasen because there were multiple transactions and more than 20 different individuals involved. Moreover, the individuals were particularly vulnerable because they spoke little English and had little financial experience. Clasen also had failed to file income taxes for a number of years. *Id.* at 190–91.

Facts similar to those in the case at hand are found in an Indiana case, *In re Olsen,* 568 N.E.2d 534 (Ind.1991). Olsen prepared and executed a contract for sale of property that had previously been sold at a tax sale. He warranted that he had "good and merchantable title free and clear of any liens, that all taxes have been paid and that there is no judgment that is or may become a lien on the property." *Id.* Olsen's conduct was found to involve fraud, deceit and misrepresentation and he was suspended from the practice of law "pending further order" of the court. *Id.*

The referee in respondent's case has recommended, and the Director of the Lawyers Professional Responsibility Board concurs, that respondent be suspended from the practice of law for one year. We give the referee's recommendations great weight, but this court alone has the final responsibility for determining the appropriate discipline. *In re Peterson,* 456 N.W.2d 89, 93 (Minn.1990).

We hereby issue the following order: Respondent is ordered suspended from the practice of law in the State of Minnesota for one year from the date of this order. In addition, respondent shall pay $750 in costs pursuant to Rule 24(a) plus disbursements pursuant to Rule 24(b) of the Rules on Lawyers Professional Responsibilities. Rule 18(a) through (e)(3) is waived. Respondent must comply with Rule 18(e)(4) and may seek reinstatement pursuant to Rule 18(f).

So ordered.