**In re Petition for DISCIPLINARY ACTION AGAINST John S. JAGIELA, an Attorney at Law of the State of Minnesota.**

No. C0–93–872.

Supreme Court of Minnesota.

June 10, 1994.

**334**

Marcia Johnson, Director, Office of Lawyers Professional Responsibility, Kenneth L. Jorgensen, First Asst. Director, Karen A. Risku, Sr. Asst. Director, St. Paul, for petitioner.

Michael J. Hoover, Minneapolis, for respondent.

## OPINION

PER CURIAM.

On April 28, 1993, the Acting Director of the Lawyers Professional Responsibility Board filed a petition with this court alleging that respondent John S. Jagiela committed professional misconduct warranting suspension. The petition for disciplinary action contained three allegations:

1) Jagiela was involved in drafting an agreement in September and October of 1990 which was back-dated to August 18, 1988. The agreement, entitled "Agreement Among Plaintiffs to Share Proceeds of Settlement Judgment" (the back-dated agreement), was given by Jagiela to opposing counsel, and to a bankruptcy court, and Jagiela failed to correct false statements concerning the date on which the document was executed in deposition testimony concerning the document.

2) Jagiela signed a misleading affidavit for use in his co-counsel's divorce proceeding.

3) Jagiela received $50,000 from a client, failed to inform his law partners of the payment, and subsequently wrote off $34,236.63 from the client's bill at the law firm.

Jagiela is a University of Minnesota Law School graduate who was admitted to practice in Minnesota in 1975. He specializes in the area of taxation and has no prior history of misconduct.

Following a four-day evidentiary hearing, the referee, the Honorable David E. Christensen, determined that Jagiela had committed professional misconduct and recommended a one-year suspension from the practice of law. The referee concluded that Jagiela violated Rules 3.3(a)(1), 3.3(a)(4), 3.4(b), 3.4(d), 4.1, 8.4(c) and 8.4(d) of the Minnesota Rules of Professional Conduct. The referee, by clear and convincing evidence, made the following findings:

1) Jagiela had created the back-dated agreement relevant to a bankruptcy proceeding for execution by his client; further, Jagiela had submitted that agreement to opposing attorneys during discovery, and failed to disclose, during discovery, during depositions, and at trial, that testimony relating to the date and creation of the agreement was false; Jagiela also falsely stated to the court in a brief and in pleadings that the agreement had been executed in 1988 and offered the back-dated agreement into evidence.

2) Jagiela signed a misleading affidavit concerning the amount of attorney fees that his co-counsel had received from his involvement in a related proceeding.

3) Jagiela committed no misconduct with respect to the $50,000 he received from his client, nor by subsequently writing off a portion of the client's bill.

According to Jagiela's account of the back-dated agreement, the document merely memorialized a prior oral agreement between the signatories made on or before August 18,

1988. He admits there was no signed, written agreement until the one he participated in drafting in September and October of 1990, which was executed by the parties thereto sometime between October 5 and October 12, 1990. Jagiela contends the back-dated agreement was based on an amalgamation of at least five documents which had all been drafted prior to August 18, 1988, and he insists that at all times he believed the back-dated agreement reflected the agreement the parties had on that date.

It appears from the record that the back-dated agreement may well have memorialized a prior oral agreement, at least to some extent. The back-dated agreement, however, was given to opposing counsel in the bankruptcy litigation, submitted to the bankruptcy court, and testified to by various parties, including Jagiela's client, in the bankruptcy litigation. Jagiela did not inform the court or opposing counsel of the back-dating of the agreement. Thus, there is clear and convincing evidence of Jagiela's misconduct with regard to the agreement.

As to the allegedly misleading affidavit signed by Jagiela for his co-counsel, the referee found only that it was inappropriate because it gave a partial rather than a complete statement of facts within Jagiela's knowledge. The affidavit related to fees co-counsel received from one plaintiff in the bankruptcy litigation. Co-counsel, in fact, received fees from all the plaintiffs in the litigation. The affidavit was used by Jagiela's co-counsel in his divorce action.

Jagiela contends his affidavit was factually correct and not misleading. He argues there was nothing wrong with not mentioning the fees his co-counsel would receive from the other four plaintiffs. He also notes his co-counsel's ex-wife admitted she was not misled about the fees the co-counsel received from the litigation.

The referee made no finding that Jagiela's affidavit misled anyone. He nonetheless found the affidavit inappropriate because the bankruptcy court had not specifically divided the recovery among the plaintiffs.

The referee recommended a one-year suspension. "Once misconduct is established, aggravating and mitigating factors should be considered in determining appropriate discipline." *In re Pokorny*, 453 N.W.2d 345, 348 (Minn.1990) (citing *In re Boyd*, 430 N.W.2d 663, 664–65 (Minn.1988)). The referee considered as aggravating factors Jagiela's denial of any wrongdoing, together with the inappropriate affidavit. He considered the serious health problems Jagiela's daughter was experiencing at the time the misconduct occurred and Jagiela's lack of a prior history of professional violations as mitigating factors.

A referee's recommendation for sanction carries great weight, although this court has final responsibility. *In re Isaacs*, 406 N.W.2d 526, 529 (Minn.1987); *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). This court weighs four factors in considering appropriate discipline: the nature of the misconduct, the cumulative weight of disciplinary violations, the harm to the public, and the harm to the legal profession. *In re Walker*, 461 N.W.2d 219, 222 (Minn.1990). As we stated in *In re Boyd*, 430 N.W.2d 663, 664–65 (Minn.1988):

> The inquiry into the appropriate measure of discipline for an attorney is necessarily subjective. Consistency is certainly a goal, but each case involves a different factual setting, different violations and different mitigating or aggravating circumstances. *In re Gubbins*, 380 N.W.2d 810, 812 (Minn. 1986). To this extent, prior disciplinary case law is helpful only through analogy, *In re Serstock*, 316 N.W.2d 559, 561 (Minn. 1982), and the facts of each individual case must be carefully examined.

We find three cases, *In re Schmidt*, 402 N.W.2d 544 (Minn.1987); *In re Boyd*, 430 N.W.2d 663 (Minn.1988); and *In re Klein*, 442 N.W.2d 317 (Minn.1989), helpful in determining the discipline Jagiela's misconduct warrants.

Schmidt received a six-month suspension for making numerous misrepresentations to a trial court to make his client appear responsible for missing a statute of limitations in a personal injury case. *In re Schmidt*, 402 N.W.2d 544 (Minn.1987). In addition, Schmidt made misrepresentations both to his client and to opposing counsel, neglected client matters, and attempted to absolve him-

self from potential claims of malpractice by his client. *Id.* 549.

In *In re Boyd,* 430 N.W.2d 663 (Minn. 1988), Boyd received a six-month suspension for preparing a false deed, having it notarized and filed, and issuing a false title opinion. We found the deed was forged specifically to avoid probate. *Id.* 665. Even though no party was harmed economically by the forgery, Boyd's conduct was criminal and unethical.

In *In re Klein,* 442 N.W.2d 317 (Minn. 1989), the attorney received an indefinite suspension with the right to petition for reinstatement after six months. The attorney had assisted his brother in obtaining a default dissolution judgment without notice to the other party, submitted a false affidavit to the court, and elicited false testimony.

We find Jagiela's back-dating of the agreement, his submission of that document to opposing counsel and to a court, and his failure to correct false testimony and pleadings, warrant discipline similar to *Schmidt, Boyd,* and *Klein.* We order that Jagiela be suspended from the practice of law for six months. He must fully comply with the requirements of Rule 26, Rules on Lawyers Professional Responsibility (RLPR). His reinstatement is conditional upon his successful completion of the professional responsibility portion of the bar exam within one year of the date of the court's suspension order. Further, pursuant to Rule 24(a) and (b), RLPR, Jagiela shall pay $750 in costs plus all disbursements necessarily incurred by the Board after the filing of its petition.