In re Petition for Disciplinary Action against Paul H. MADSEN, an Attorney at Law of the State of Minnesota.

No. C8–90–1088.

Supreme Court of Minnesota.

Jan. 20, 1995.

Marcia A. Johnson, Director, Lawyers Professional Responsibility Board, Henry C. Granison, Asst. Director, St. Paul, for petitioner.

Paul H. Madsen, respondent pro se.

## OPINION

PER CURIAM.

On August 10, 1994, respondent Paul H. Madsen was served with a petition for disciplinary action but failed to file an answer within 20 days of service as required by Rule 13(a) of the Rules of Lawyers Professional Responsibility. As a result, the allegations were deemed admitted. *See* R.Law.Prof. Resp. 13(b). On October 10, 1994, the director filed its brief requesting that Madsen be indefinitely suspended for a minimum of 36 months and that he be required to petition for reinstatement pursuant to Rule 18(a), R.Law.Prof.Resp.

Paul Madsen was admitted to practice law in Minnesota in 1984. In 1990, Madsen was publicly reprimanded by this court for 1) practicing while his license was suspended (for failure to pay the annual registration fee) and 2) failure to cooperate with the disciplinary investigation. *In re Madsen,* 456 N.W.2d 250 (Minn.1990). The current petition against Madsen is the result of his intentional misrepresentations to federal and state tax authorities and failure to cooperate with the disciplinary investigation.

■ Madsen's misconduct stems from his representation of Mir S. and Ashrafunsia Ali. For several years Madsen had provided legal and tax services for businesses owned or controlled by the Alis. His misconduct stems from the handling of corporate tax matters for Jafer Enterprises, Inc. ("Jafer"), a business owned by the Alis. On April 17, 1989, Madsen, acting as corporate attorney for Jafer, executed an Application for Automatic Extension of Time to File Corporation

Income Tax Return, requesting a six-month extension to October 15, 1989, to file Jafer's 1988 federal corporate tax return. On the Application for Extension form, Madsen stated that the tax year for Jafer began on February 1, 1988, and ended on January 31, 1989. However, the tax year for Jafer actually ended on December 31, 1988; thus the Application for Extension should have been filed by March 15, 1989. The line immediately above Madsen's signature on the Application Extension states:

> Under penalties of perjury, I declare that I have been authorized by the above-named corporation to make this application, and to the best of my knowledge and belief the statements made are true, correct and complete.

Thus, Madsen's statements to the Internal Revenue Service ("IRS") were made under the penalties of perjury.

Similarly, on April 17, 1989, Madsen also executed a Minnesota Department of Revenue automatic seven-month extension application for corporations. Madsen made the same misrepresentation on the Minnesota application that he made on the federal application.

On August 8, 1989, the IRS wrote to Jafer, in care of Mr. Ali, stating that the year listed on the Application for Extension was not consistent with prior Jafer tax forms filed with the IRS; specifically, all prior Jafer tax forms listed the Jafer tax year as ending on December 31. Jafer was directed to explain or correct the discrepancy within 30 days.

On August 16, 1989, Ali forwarded a copy of the IRS letter to Madsen, with a letter pointing out what Ali believed was a mistake on the Application for Extension and requesting Madsen to reply to the IRS. Madsen wrote to the IRS on August 25, 1989. In that letter Madsen falsely stated to the IRS that he had prepared and submitted the Application for Extension on April 17, 1989, believing that Jafer's taxable year ended on January 31, 1989, making his filing for extension timely. Madsen further stated that he did not learn that Jafer's taxable year ended on December 31 until after the form had been filed, thus claiming, "[t]his was not a willful failure * * * but rather an uninten-

tional mistake * * *." Madsen requested that the IRS approve an extension until September 15, 1989.

The next day, on August 26, 1989, Madsen wrote a letter to Mr. Ali stating in part:

> There was no mistake made in filing the Form 7004, Application for Extension of Time To File Corporation Income Tax Return for Jafer Enterprises, Inc. I was well aware that the corporation's taxable year was January 1–December 31. However, you will note that I sent the application in on April 17, 1989, three and one-half months after the close of its tax year. Had I correctly stated the tax year on the application form, the application would be shown to have been filed too late, since the extension must be requested no later than the due date of the return. In the case of a calendar year corporation, that date is *March 15th.* Now you can understand why I misstated the tax year on the Form 7004.
>
> I have replied to the Internal Revenue Service explaining to them that I mistakenly believed the tax year of the corporation was 2/1–1/31. I resubmitted the Form 7004 and asked the service to reconsider the application and allow the six month extension. I'm sure it will be granted.

In January 1993, Mr. Ali filed an ethics complaint with the Director's Office against Madsen, involving other issues. While investigating the complaint, the Director's Office discovered the extension applications and Madsen's letter to Ali in Madsen's client file. During February and March 1994, the Director's Office wrote to Madsen on three different occasions requesting that he explain the false statements to the taxing authorities. On March 28, 1994, Madsen replied:

> I must have intentionally misstated the fiscal year of my corporate client when I originally applied on its behalf for an extension of time within which to file its 1989 [sic] federal and Minnesota corporate income tax returns.

■ Because the allegations are deemed admitted, the only issue before us is the appropriate sanction to be imposed. We have said previously that sanctions are not

imposed to punish the attorney, but to protect the public, to guard the administration of justice, and to deter future misconduct. *In re Jensen,* 418 N.W.2d 721, 722 (Minn.1988); *In re Hanson,* 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). The court looks at four factors in deciding the appropriate discipline: 1) the nature of the misconduct; 2) the cumulative weight of the disciplinary rules violations; 3) the harm to the public; and 4) the harm to the legal profession. *In re Smith,* 381 N.W.2d 431, 434 (Minn.1986).

In prior cases this court has not hesitated to severely punish intentional misrepresentation that involves defrauding clients or committing a fraud on the court. *See In re Jones,* 383 N.W.2d 303, 307 (Minn.1986); *In re Salmen,* 484 N.W.2d 253, 254 (Minn.1992). In those cases, we determined that severe discipline was warranted because the attorney's actions constituted a pattern of misconduct or directly undermined the integrity of the judicial system. *Id.* However, in this case a pattern of fraudulent misconduct does not exist. Instead, this case more closely resembles *In re Boyd,* 430 N.W.2d 663, 664–65 (Minn.1988). In *Boyd,* we imposed a six month suspension for an attorney's misconduct involving preparation of a false deed which he had his client forge a signature on and then notarized, filed and later issued a false title opinion based on the fraudulent deed. *Id.* at 663–64, 667. In *Boyd* we held that "[t]he fraudulent conduct here was more than a mistake in judgment. The forged deed was deliberately designed to avoid probate proceedings." *Id.* at 665. Furthermore, in determining the appropriate sanction we indicated that Boyd's prior disciplinary encounters were part of the analysis:

> In addition to the severe nature of [Boyd's] acts, the timing of his conduct must be considered. Mr. Boyd had received three previous disciplinary admonitions between January 1985 and October 1986. This prior discipline is used to help determine the appropriate sanction in this case.

*Id.* at 666.

Similarly, in the present case, Madsen's conduct was clearly fraud. He intentionally lied to the state and federal tax authorities in order to receive filing extensions which, had he diligently filed his client's forms in a timely manner, would have been granted. Additionally, Madsen did not cooperate with the Director's Office, did not file an answer to the original petition, did not file a brief regarding appropriate discipline, and did not present any mitigating circumstances. Further, this is the second time in ten years that Madsen's misconduct has been disciplined.

Accordingly, it is the order of this court that respondent Paul H. Madsen is suspended from the practice of law in the State of Minnesota indefinitely, from the date of this order, with no opportunity for readmission for six months. Reinstatement shall be conditioned upon compliance with the requirements in Rule 18 and Rule 26, R.Law.Prof. Resp. Also, respondent shall pay the director $750 in costs pursuant to Rule 24(a), R.Law.Prof.Resp.